UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| FAYE BERUBE, | ) |
| | ) |
|           PLAINTIFF | ) |
| | ) |
| v. | )   CIVIL NO. 2:15-CV-326-DBH |
| | ) |
| UBS FINANCIAL SERVICES, INC., | ) |
| | ) |
|           DEFENDANT | ) |

DECISION AND ORDER ON DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

The remaining issue in this lawsuit is whether Faye Berube, a former employee of UBS Financial Services, Inc. (UBS), suffered unlawful discrimination in her efforts to obtain business expense reimbursement after her termination. I previously ruled that Maine's statute of limitations barred Berube's disability claims against UBS for terminating her and the allegedly hostile work environment that preceded her termination (ECF No. 21). But Berube claims that, after terminating her and within the statute of limitations, UBS denied her access to the computer system in her office, which resulted in her inability to submit certain expense reports for reimbursement. I heard oral argument on UBS's motion for summary judgment on December 5, 2016. I now conclude that Berube has failed to produce evidence that UBS took adverse employment action against her. She has therefore failed to state a claim under Maine Human Rights Act (MHRA), 5 M.R.S.A. § 4572, and I **GRANT** UBS's motion for summary judgment.

**FACTS**

Where facts are disputed, I state them in the light most favorable to Berube, the non-moving party. UBS concedes many of the facts solely for purposes of its summary judgment motion.

Faye Berube worked for UBS as a Complex Manager for nearly five years, beginning in May 2008. Def.'s Statement of Material Facts ¶¶ 4–5 (ECF No. 39) (Def.'s SMF); Pl.'s Resp. to Def.'s Statement of Material Facts ¶¶ 4–5 (ECF No. 41) (Pl.'s RSMF). In this position, her responsibilities included leading all operational, administrative, and supervisory functions and staff within UBS's Northern New England Complex. Def.'s SMF ¶¶ 2–3, 14; Pl.'s RSMF ¶¶ 2–3, 14; Complex Admin. Manager Job Description, Aff. of Francis X. Dee, Ex. E (ECF No. 39-6). In early 2011, she took a medical leave due to depression and anxiety. Pl.'s Statement of Material Facts ¶ 11 (ECF No. 41-1) (Pl.'s SMF); Def.'s Resp. to Pl.'s Statement of Material Facts ¶ 11 (ECF No. 43) (Def.'s RSMF). Upon her return to the office, she discussed her depression, anxiety, and medications with her supervisors on an ongoing basis. Pl.'s SMF ¶¶ 15, 17; Def.'s RSMF ¶¶ 15, 17.

On April 3, 2013, Berube was asked to coordinate the staffing assignment of a Sales Assistant to a Financial Advisor. Def.'s SMF ¶ 17; Pl.'s RSMF ¶ 17. She subsequently became overwhelmed, beginning to cry and shake uncontrollably, and proceeded to leave the building. Def.'s SMF ¶¶ 16, 19; Pl.'s RSMF ¶¶ 16, 19. As she was exiting the building, she encountered Sean Steady, the Financial Advisor involved in her staffing assignment, and began to experience a breakdown. Def.'s SMF ¶¶ 19–21; Pl.'s RSMF ¶¶ 19–21. Berube

2

contemporaneously informed Thomas Hanlon, her supervisor, "That was the last straw[.] I left because I am so f mad at hal and jad."[1] Def.'s SMF ¶ 22; Pl.'s RSMF ¶ 22; Apr. 3, 2013 E-mail from Faye Berube to Thomas Hanlon, Aff. of Francis X. Dee, Ex. H (ECF No. 39-9). She did not return to the office. See Pl.'s SMF ¶¶ 24–25; Def.'s RSMF ¶¶ 24–25.

After that incident, Berube was asked to meet UBS management in public at the Tim Horton's restaurant in South Portland, Maine. Pl.'s SMF ¶ 25; Def.'s RSMF ¶ 25. Berube met there with Hanlon and Judith Fenerty, Hanlon's supervisor, on April 11. Def.'s SMF ¶ 24; Pl.'s RSMF ¶ 24. They informed her that she was being terminated from UBS. Def.'s SMF ¶ 24; Pl.'s RSMF ¶ 24. When Berube asked why she was being terminated, Hanlon replied, "Faye, you can't keep flipping out in the office." Def.'s SMF ¶ 25; Pl.'s RSMF ¶ 25. Berube was not allowed access to her office or her computer following this meeting. Pl.'s SMF ¶ 31; Def.'s RSMF ¶ 31. She also had to wait for a period of time to receive her personal belongings from the office. Pl.'s SMF ¶ 32; Def.'s RSMF ¶ 32. She received some of her belongings on April 26, 2013, and the remainder of her belongings sometime after May 3, 2013. Pl.'s SMF ¶¶ 32–34; Def.'s RSMF ¶¶ 32–34.

At the time of her termination, Berube had several outstanding charges on her corporate American Express card, Def.'s SMF ¶ 36; Pl.'s RMSF ¶ 36, the card

---

[1] By "hal and jad," Berube was referring to Hal Dursema, the Assistant Complex Director at UBS, Aff. of Hal Dursema ¶ 1 (ECF No. 39-12), and Joseph "Jad" Dieterle, the Complex Director who had hired the plaintiff at UBS, Def.'s SMF ¶ 7; Pl.'s RSMF ¶ 7. Dursema and Dieterle asked Berube to coordinate the staffing assignment involving Sean Steady. Def.'s SMF ¶ 17; Pl.'s RSMF ¶ 17; Faye Berube Dep. Tr. 71:17–73:25 (ECF No. 41-4). Berube testified that she "was upset because Jad and Hal were making decisions about staffing that were clearly in my realm, without me." Faye Berube Dep. Tr. 71:17–20 (ECF No. 41-4).

3

she used for business expenses during her employment at UBS, Pl.'s SMF ¶ 26; Def.'s RSMF ¶ 26. As part of the application for her American Express card, Berube had affirmed that she would use the card for only business or commercial purposes, Def.'s SMF ¶¶ 34–35; Pl.'s RSMF ¶¶ 34–35, and that she would be liable to American Express for all charges, Pl.'s SMF ¶ 10; Def.'s RSMF ¶ 10. In submitting expense reports to UBS for reimbursement before her termination, Berube typically used UBS's CONCUR system, which electronically synchronized with her American Express card statement to create a prepopulated expense report without the need for paper documentation. Pl.'s SMF ¶¶ 27–28; Def.'s RSMF ¶¶ 27–28. She also used her computer's Outlook calendar to track her travels and note which days corresponded to which expenses. Pl.'s SMF ¶ 29; Def.'s RSMF ¶ 29.

Following her termination, UBS provided Berube with a copy of the form to be used for submitting expenses for reimbursement. Def.'s SMF ¶ 38; Pl.'s RSMF ¶ 38. Berube accordingly submitted paper reimbursement requests for several outstanding business expenses and was fully reimbursed for all the expenses she submitted, Def.'s SMF ¶ 41–42; Pl.'s RSMF ¶¶ 41–42; Pl.'s SMF ¶ 30; Aff. of Hal Dursema ¶ 6 (ECF No. 39-12); Faye Berube Dep. Tr. 192:6–9 (ECF No. 41-4), although she waited at least a month for payment after submitting the paper reimbursement requests, Pl.'s SMF ¶ 30; Def.'s RSMF ¶ 30. Berube did not, however, submit reimbursement requests for approximately

$1,000 in charges on her American Express card.[2]  Def.'s SMF ¶ 43; Pl.'s SMF ¶ 43; Faye Berube Dep. Tr. 192:15–20 (ECF No. 41-4).

On May 3, 2013, Berube advised Roxanne Jodzio, a UBS Human Resources specialist, of her difficulty in submitting these remaining reimbursement requests because she was not allowed access to her office.[3] May 3, 2013 E-mail from Faye Berube to Roxanne Jodzio, Aff. of Sarah A. Churchill, Ex. E 1 (ECF No. 41-7).  Although UBS did not physically allow Berube into her office to access her computer and personal belongings, Pl.'s SMF ¶ 31; Def.'s RSMF ¶ 31, Jodzio offered to help her locate relevant information for submitting her business expenses, Def.'s SMF ¶ 40; Pl.'s RSMF ¶ 40.  On May 6, 2013, Jodzio sent the plaintiff an e-mail:

> Regarding the expenses, I would hope that through receipts and the credit card statements, you would be able to [put] together the timeline of your branch visits.  As you may recall, once an individual is terminated, Outlook is [no] longer available.  As such, if there is some other way that I can help you to determine the timeframes, please let me know.  If you would like me to check in with your former direct reports regarding specific dates in their branches, please let me know.[4]

---

[2] Berube testified that the account statement for her American Express card showed a $154.97 charge to U-Haul, Def.'s SMF ¶ 45, which was noted as "credit pending investigation," Pl.'s RSMF ¶ 45; Faye Berube Dep. Tr. 154:20–155:4 (ECF No. 41-4).  Berube testified that she did not rent a U-Haul during this time period and did not know where the expense came from.  Pl.'s RSMF ¶ 45; Faye Berube Dep. Tr. 155:5–10 (ECF No. 41-4).  The mysterious U-Haul entry has no effect, one way or the other, on my decision.

[3] Berube informed Jodzio that she had "no frame of reference for reimbursement for the travel and expenses, as a great deal of the information was in outlook or other locations."  May 3, 2013 E-mail from Faye Berube to Roxanne Jodzio, Aff. of Sarah A. Churchill, Ex. E 1 (ECF No. 41-7).

[4] Berube also asserted in her complaint that she received a letter dated June 1, 2013 congratulating her on five years of service to UBS.  Compl. ¶ 46; Def.'s SMF ¶ 48; Pl.'s RSMF ¶ 48.  She did not argue in her objection to UBS's motion for summary judgment that receiving this anniversary letter related to her reimbursement issues or otherwise constituted adverse employment action, see Pl.'s Obj. to Def.'s Mot. for Summ. J. (ECF No. 40), and at oral argument she specifically withdrew the argument.  Even if Berube had persisted in the argument, I would still conclude that the letter had nothing to do with adverse employment action.

Def.'s SMF ¶ 40; Pl.'s RSMF ¶ 40; May 6, 2013 E-mail from Roxanne Jodzio to Faye Berube, Aff. of Francis X. Dee, Ex. M (ECF No. 39-14).

Jodzio subsequently contacted Berube regarding these outstanding charges on June 10 and June 12, 2013, reminding Berube that she had been provided with an expense reimbursement form and offering to "discuss further and assist in any way" that she could.[5] June 12, 2013 E-mail from Roxanne Jodzio to Faye Berube, Suppl. Aff. of Francis X. Dee, Ex. B (ECF No. 43-3). Berube responded to Jodzio that she did not "need you or anyone at UBS taking control of my financial responsibilities for me and consider this an invasion of privacy." June 13, 2013 E-mail from Faye Berube to Roxanne Jodzio, Suppl. Aff. of Francis X. Dee, Ex. B (ECF No. 43-3). Berube did not pay the remaining balance on the American Express Card. Faye Berube Dep. Tr. 193:1–9 (ECF No. 41-4).

**PROCEDURAL HISTORY**

Berube filed a Complaint of Employment Discrimination with the Maine Human Rights Commission (MHRC) on April 8, 2014. Compl. of Employment Discrimination, Aff. of Francis X. Dee, Ex. J (ECF No. 39-11). Because Berube did not file her Complaint of Employment Discrimination within 300 days of her

---

[5] The June 2013 e-mail exchange was an exhibit to the defendant's lawyer's affidavit filed in conjunction with the defendant's reply memorandum of law in further support of its summary judgment motion (ECF No. 42), as part of the defendant's response to the plaintiff's statement of material facts (ECF No. 43). June 12, 2013 E-mail from Roxanne Jodzio to Faye Berube, Suppl. Aff. of Francis X. Dee, Ex. B (ECF No. 43-3). Local Rule 56(d) does not contemplate additional factual assertions at that stage of the summary judgment practice, and the defendant did not seek permission to file the affidavit and its exhibits. In the absence of oral argument and thus an opportunity to object, I would not consider such new material. In this case, however, there was oral argument, the plaintiff's lawyer did not object to the exhibits, and both lawyers referred generally to the e-mail exchanges. In any event, even without the affidavit contents, I would reach the same conclusion in this decision.

April 11, 2013 termination, the MHRC dismissed her complaint as untimely under 5 M.R.S.A. § 4612(2).  Feb. 26, 2015 MHRC Notice of Dismissal, Aff. of Francis X. Dee, Ex. A (ECF No. 11-2).  The Equal Employment Opportunity Commission (EEOC) also issued a Dismissal and Notice of Rights to Berube because her charge was not timely filed with the EEOC.  Apr. 13, 2015 EEOC Dismissal and Notice of Rights, Aff. of Francis X. Dee, Ex. C (ECF No. 11-2).

On May 21, 2015, Berube brought suit in the Maine Superior Court, alleging disability discrimination under the MHRA, 5 M.R.S.A. § 4572.  Me. Super. Ct. (Cumberland Cnty.) Compl., 15-CV-226, Def.'s Notice of Removal, Ex. A (ECF No. 1-1).  On August 14, 2015, UBS removed the case based on diversity of citizenship between the parties, 28 U.S.C. §§ 1332(a), 1441.  Def.'s Notice of Removal (ECF No. 1).  UBS then filed a motion to dismiss the complaint for failure to state a claim, Fed. R. Civ. P. 12(b)(6), arguing that the complaint was untimely, 5 M.R.S.A. §§ 4611, 4621.  Def.'s Mot. to Dismiss (ECF No. 11).

From the bench, I granted in part and denied in part UBS's motion to dismiss on November 18, 2015, (ECF No. 21).  Specifically, I granted the motion as to Berube's claim for the termination and the preceding hostile work environment because the claim was untimely, but I denied the motion as to the post-termination reimbursement dispute.  Thus, only Berube's claim regarding her reimbursement dispute, including the relevant post-termination events leading up to that dispute, remains.

## ANALYSIS

Berube asserts only a state law claim under the Maine Human Rights Act. "Because the MHRA generally tracks federal anti-discrimination statutes, it is

7

appropriate to look to federal precedent for guidance in interpreting the MHRA." Doyle v. Dep't of Human Servs., 2003 ME 61, ¶ 14 n.7, 824 A.2d 48 (quoting Winston v. Me. Tech. Coll. Sys., 631 A.2d 70, 74–75 (Me.1993)); see Kelley v. Corr. Med. Servs., Inc., 707 F.3d 108, 115 n.12 (1st Cir. 2013) ("Generally, disability-related claims under the MHRA are 'construed and applied along the same contours as the ADA.'" (quoting Dudley v. Hannaford Bros. Co., 333 F.3d 299, 312 (1st Cir.2003)).

To establish a prima facie case under the MHRA, a plaintiff must show that: (1) she "suffers from a disability or handicap;" (2) she "was nevertheless able to perform the essential functions of [her] job, either with or without reasonable accommodation;" and (3) her employer "took an adverse employment action against [her] because of, in whole or in part, [her] protected disability."[6] Tobin v. Liberty Mut. Ins. Co., 433 F.3d 100, 104 (1st Cir. 2005). For the purposes of this summary judgment motion, UBS does not dispute that Berube suffers from a disability and that she was qualified for her position. See Def.'s

---

[6] In evaluating disability-related employment discrimination claims under the MHRA, the Law Court has historically applied the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), at the summary judgment stage. E.g., Daniels v. Narraguagus Bay Health Care Facility, 2012 ME 80, ¶¶ 30–31, 45 A.3d 722; Doyle v. Dep't of Human Servs., 2003 ME 61, ¶¶ 14–15, 824 A.2d 48. Accordingly, if the plaintiff establishes a prima facie case, the burden of production "shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action." Doyle, 2003 ME 61, ¶ 15, 824 A.2d 48 (quoting Gillen v. Fallon Ambulance Serv., Inc., 283 F.3d 11, 30 (1st Cir. 2002)). If the defendant can put forward such a reason, the burden then shifts back to the plaintiff, who must "demonstrate that the nondiscriminatory reason is pretextual or irrelevant and that the unlawful discrimination brought about the adverse employment action." Doyle, 2003 ME 61, ¶ 15, 824 A.2d 48. The Law Court recently ruled that the McDonnell Douglas analysis does not apply at the summary judgment stage for retaliation claims brought under the Maine Whistleblowers' Protection Act, 26 M.R.S. §§ 831–840. Brady v. Cumberland Cnty., 2015 ME 143, ¶ 39, 126 A.3d 1145. In the wake of Brady, the Law Court has yet to decide whether McDonnell Douglas still applies to disability-related claims brought under the MHRA. Cf. Daniels, 2012 ME 80, ¶¶ 28–29, 45 A.3d 722 (Silver, J., concurring) (suggesting that "it is time to simplify the summary judgment process and eliminate any burden-shifting analysis"). Because I find that Berube has not established a prima facie case of disability discrimination, however, I need not determine whether the McDonnell Douglas burden-shifting framework applies here.

8

SMF ¶ 28; Def.'s Mot. for Summ. J. 15 (ECF No. 38). Thus, the critical issue here is whether UBS "took adverse employment action" against Berube.

An adverse employment action "must materially change the conditions of plaintiffs' employ." Gu v. Boston Police Dep't, 312 F.3d 6, 14 (1st Cir. 2002). Adverse employment actions include "demotions, disadvantageous transfers or assignments, refusals to promote, unwarranted negative job evaluations, and toleration of harassment by other employees." Hernandez-Torres v. Intercontinental Trading, Inc., 158 F.3d 43, 47 (1st Cir. 1998). The First Circuit has emphasized that "[w]ork places are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action." Blackie v. Maine, 75 F.3d 716, 725 (1st Cir. 1996). Thus, an adverse employment action "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." Morales-Vallellanes v. Potter, 605 F.3d 27, 35 (1st Cir. 2010) (quoting Marrero v. Goya of P.R., Inc., 304 F.3d 7, 23 (1st Cir. 2002)); Berry v. City of S. Portland, 525 F. Supp. 2d 214, 229 (D. Me. 2007).

Berube argues that she could not submit approximately $1,000 in business expenses for reimbursement because she was not allowed access to her office following her termination. Pl.'s Obj. to Def.'s Mot. for Summ. J. 5 (ECF No. 40). She also claims that she had to wait for an extended period of time for approval of the expenses she did submit for reimbursement, which impacted her credit. Id. She does not, however, contest that UBS fully reimbursed her for all of the expenses she did submit. Nor does she dispute that UBS contacted her at least three times offering to assist her in submitting her outstanding expenses

9

for reimbursement. Yet rather than accept UBS's multiple offers to help her locate the relevant information for her remaining expenses, she instead responded to Jodzio, first, that there was "[n]othing to discuss," and second, that she did "not need you or anyone at UBS taking control of my financial responsibilities for me and consider this an invasion of privacy."[7] June 13, 2013 E-mail from Faye Berube to Roxanne Jodzio, Suppl. Aff. of Francis X. Dee, Ex. B (ECF No. 43-3).

Taking the facts in the light most favorable to the plaintiff, e.g., Najas Realty, LLC v. Seekonk Water District, 821 F.3d 134, 140 (1st Cir. May 2, 2016), I find that UBS's conduct does not constitute adverse employment action. I do not doubt Berube's assertion that it would have been easier for her to submit expense reports had she been allowed access to her office. But she has not shown that it was infeasible for her to submit the remaining expenses for reimbursement given UBS's efforts to assist her. Nor has she demonstrated that waiting at least a month for reimbursement on the expenses she did submit caused her particular financial harm.[8]

Had UBS declined to reimburse Berube for any business expenses or refused to assist her in obtaining the information for the outstanding expenses that she needed from her office, this case might be different. Berube, however, has not shown that the reimbursement issues she experienced following her

---

[7] See supra note 5.
[8] She asserted an adverse impact on her credit in her brief, Pl.'s Obj. to Def.'s Mot. for Summ. J. 5 (ECF No. 40), but her statement of facts and supporting materials do not support that assertion. I decline her lawyer's invitation at oral argument to draw an inference of adverse credit impact on this record. I do not know whether UBS paid the American Express charges when Berube did not.

termination involved "any change in salary, benefits, job responsibilities, or other material terms and conditions of her job." Martin v. Inhabitants of City of Biddeford, 261 F. Supp. 2d 34, 38 (D. Me. 2003); Paquin v. MBNA Mktg. Sys., Inc., 233 F. Supp. 2d 58, 67 (D. Me. 2002) ("Plaintiff has not shown that she was deprived in any way of a benefit or privilege that was 'part and parcel' of the employment relationship." (quoting Hishon v. King & Spalding, 467 U.S. 69, 75 (1984))).  Although UBS's decision to deny her physical access to her office following her termination "may have been an inconvenience to the plaintiff, it did not materially alter the conditions of her employment." Martin, 261 F. Supp. 2d at 39; see Shervin v. Partners Healthcare Sys., Inc., 804 F.3d 23, 49 (1st Cir. 2015) (distinguishing "between acts that might rise to the level of an adverse action (such as a decision to discharge or materially disadvantage an employee) and those acts that merely cause 'subjective feelings of disappointment or disillusionment'")).

I conclude that Berube has not shown that UBS took adverse employment action against her.  Therefore, she has failed to establish a prima facie case for disability discrimination under the MHRA.

## CONCLUSION

The defendant's motion for summary judgment is **GRANTED**.

**SO ORDERED.**

**DATED THIS 12TH DAY OF DECEMBER, 2016**

/S/ D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**